# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JENNIFER A. HADSALL, Regional Director of Region 18 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,

    Petitioner,

v.

SUNBELT RENTALS INC.,

    Respondent.

Case No. 20-CV-181-JPS
7th Cir. Case No. 20-2482

**ORDER**

**1.    INTRODUCTION**

On August 7, 2020, this Court granted Petitioner's, Jennifer Hadsall, Regional Director of Region 18 ("Director"), petition for injunctive relief under Section 10(j) of the National Labor Relations Act (the "Act"). (Docket #18). On August 10, 2020, Respondent, Sunbelt Rentals Inc. ("Sunbelt"), filed a motion to stay the Court's final order granting injunctive relief pending appeal. (Docket #19). The matter became fully briefed on August 26, 2020. (Docket #20, #25, and #26). Upon consideration of Sunbelt's and the Director's submissions, this Court will deny Sunbelt's motion to stay.[1]

**2.    LEGAL STANDARD**

Federal Rule of Civil Procedure 62(c) grants this Court authority to stay an injunction during the pendency of the appeal of a final order. A court's decision whether to stay an order pending appeal is a discretionary

---

[1] The Court notes that Sunbelt's submissions contain numerous spurious legal arguments and disingenuous factual statements.

one, informed by the consideration of the following factors provided by the Supreme Court:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The party seeking a stay has the burden of proving that these factors warrant a stay. *Id.* The first two factors, (1) whether appellant has made a showing of likelihood of success on appeal and (2) whether appellant has demonstrated a likelihood of irreparable injury absent a stay, are the most critical. *Nken v. Holder*, 556 U.S. 418, 434–435 (2009).

3. **ANALYSIS**

    **3.1 Sunbelt has not made a showing that it has a substantial likelihood of success on appeal**

In the context of a motion to stay a final judgment pending appeal, "where the applicant's arguments have already been evaluated on the success scale, the applicant must make a stronger threshold showing of likelihood of success to meet its burden." *In the Matter of Forty–Eight Insulations, Inc.*, 115 F.3d 1294, 1301 (7th Cir. 1997). As a result, to satisfy the first factor, the movant must "demonstrate a substantial likelihood of success, not merely the possibility of success." *Id.*

Sunbelt's main argument suggesting it has a substantial likelihood of success is that the Court did not apply the *Wright Line*[2] test correctly. (Docket #26 at 2–3). Sunbelt states that "in order to find an unfair labor practice, there must be an initial finding of evidence of anti-union animus

---

[2] *Wright Line*, 251 NLRB 1083, 1980 WL 12312 (1980).

by a decision maker. Evidence of animus by a non-decision maker is not probative of an employer's motive in making a decision" (*Id.* at 2). In particular, Sunbelt argues that the Court needed to find evidence of anti-union animus by Regional Vice President Jason Mayfield ("Mayfield"), who was the chief negotiator and decision maker for the reorganization, in order to apply *Wright Line* correctly. (*Id.* at 2–3).

However, Sunbelt's argument lacks merit because there is no rule that requires the Director to prove directly that the ultimate decision maker acted with anti-union animus. Instead, it is well-established that anti-union animus may be inferred from circumstantial or direct evidence. *See Challenge Mfg. Co. v. NLRB*, 815 F. App'x 33, 40 (6th Cir. 2020); *Charter Commc'ns, Inc. v. NLRB*, 939 F.3d 798, 815 (6th Cir. 2019); *FiveCAP, Inc. v. NLRB*, 294 F.3d 768, 778 (6th Cir. 2002); *W.F. Bolin Co. v. NLRB*, 70 F.3d 863, 871 (6th Cir. 1995); *AutoNation, Inc. v. NLRB*, 801 F.3d 767, 775 (7th Cir. 2015); *Big Ridge, Inc. v. NLRB*, 808 F.3d 705, 714 (7th Cir. 2015); *Loparex, LLC v. NLRB*, 591 F.3d 540, 546 (7th Cir. 2009); *NLRB v. Louis A. Weiss Mem'l Hosp.*, 172 F.3d 432, 442 (7th Cir. 1999). "'Circumstantial evidence inviting an inference of animus includes, among other examples, 'the company's expressed hostility towards unionization combined with knowledge of the employees' union activities' and 'proximity in time between the employees' union activities and their discharge.'" *Charter Commc'ns, Inc.*, 939 F.3d at 815 (internal citations omitted). Additionally, "[i]n cases involving employers that are corporations [], one must look to the employer's agents (the managers and supervisors)—whose actions can be imputed to the employer—to find the motivations for their actions." *Louis A. Weiss Mem'l Hosp.*, 172 F.3d at 442. Therefore, the Court applied the *Wright Line* test correctly to determine whether Director had shown anti-union animus was

a substantial or motivating factor in the employer's decision to take adverse action against the employees.

Next, Sunbelt argues that Mayfield would have made the same decision, to reorganize the facility and terminate the employees, regardless of the alleged anti-union animus. (Docket #26 at 4–6). Sunbelt provides additional economic information to support its argument. (*Id.*) However, the Court remains unmoved. Sunbelt has the burden to provide a stronger showing that it has a likelihood of success because the Court already evaluated Sunbelt's argument. *In re Forty–Eight Insulations*, 115 F.3d at 1301. Sunbelt has not met that burden.

Additionally, Sunbelt argues that the Court "erred in relying on the ALJ's recommendation because it contains many errors, some of which the Court directly repeated in the Order." (Docket #26 at 6). When an ALJ has made a decision regarding the underlying administrative proceedings after presiding over the merits hearing, the court can draw upon the ALJ's factual and legal determinations as "a useful benchmark against which the Director's prospects of success may be weighed." *Bloedorn v. Francisco Foods, Inc.*, 276 F.3d 270, 288 (7th Cir. 2001). The court will "give some measure of deference to the view of the ALJ" in determining the likelihood of success. *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 502 (7th Cir. 2008). The Court did not adopt the ALJ's order, instead it relied upon some of the factual and legal determinations as a benchmark to determine the Director's likelihood of success. To be sure, none of the alleged errors that the Court cited in the administrative record have sufficient relevance to change the Court's ultimate opinion regarding the injunction and stay. Indeed, the alleged errors are insignificant and represent a minuscule amount of the

information the Court used to make its decision regarding the § 10(j) injunction.

Lastly, Sunbelt argues that it has a strong likelihood of success because it filed fifty (50) exceptions to the ALJ's decision. (Docket #20 at 2). This Court is not the Board, who will make the ultimate decision on the merits. *Bloedorn*, 276 F.3d at 287. Instead, this Court relied upon the parties' submissions, administrative record, and ALJ recommendation to decide the probability that the Director will prevail on the merits before the Board. Thus, the exceptions Sunbelt has filed to the Board have no meaningful significance to the Court's decision.

In sum, because the Court already evaluated Sunbelt's likelihood of success in the § 10(j) injunction order, to obtain a stay, Sunbelt must make a stronger showing that it has a likelihood of success on appeal. Sunbelt has not provided sufficient support—factual or legal—that satisfies this heightened standard. Thus, Sunbelt fails to meet the first factor required to grant a stay pending appeal.

### 3.2 Sunbelt has not shown it will suffer irreparable harm absent a stay

The Court's original decision found that the Director would be irreparably harmed if a § 10(j) injunction was not granted. (Docket #18 at 11–14). To obtain a stay of that injunction, Sunbelt must provide a stronger showing that it will suffer irreparable harm if the stay is not imposed. Sunbelt has argued that it will suffer economically by the injunction. This is the same argument Sunbelt made before the Court regarding the § 10(j) injunction. After reviewing Sunbelt's additional arguments and information, the Court finds that Sunbelt has not made a stronger showing.

Page 5 of 8
Case 2:20-cv-00181-JPS   Filed 09/03/20   Page 5 of 8   Document 31

Additionally, Sunbelt claims that the injunction order requires "face-to-face negotiation sessions," which pose irreparable health and safety concerns to the negotiating teams during the COVID-19 pandemic. (Docket #20 at 8; Docket #26 at 10). This representation is blatantly false. Nothing in the Court's Order requires face-to-face negotiations or in-person negotiations. (Docket #18 at 22–24). Obviously, both negotiating teams' health and safety are of utmost importance. The use of telephone conference calls and video conferencing should be more than sufficient for both parties to negotiate safely during the pandemic.

### 3.3 The Director will be substantially injured if a stay is granted

The Court's holding, that the Director would be irreparably harmed if the § 10(j) injunction was not granted, has not changed. (Docket #18 at 11–14). Specifically,

> The Union's position to negotiate has been drastically reduced by Sunbelt's actions and while waiting for the Board's decision. Without a § 10(j) injunction, the harm may be irreparable–not only because time is passing, but also because the employees saw the aggressive actions taken by Sunbelt against the Union and Union employees.

(*Id.* at 12). "[T]he discharge of active and open union supporters risks a serious adverse impact on employee interest in unionization and can create irreparable harm to the collective bargaining process." (*Id.* at 13) (quoting *Frankl v. HTH Corp.*, 650 F.3d 1334, 1363 (9th Cir. 2011)). Thus, imposing a stay of the injunction would substantially injure the Director.

### 3.4 The public interest does not support a stay

Sunbelt makes several arguments that a stay is in the public interest. None have merit. First, Sunbelt argues that the "public interest and due

Page 6 of 8
Case 2:20-cv-00181-JPS   Filed 09/03/20   Page 6 of 8   Document 31

process lies in favor of allowing the NLRB to determine whether Respondent violated the NLRA and not allowing the NLRB to base its argument on an assumption that Respondent committed a wrong when the case has not been decided." (Docket #26 at 14). If one were to follow Sunbelt's logic, then injunctive relief would never be granted, which borders on the absurd. Instead, § 10(j) of the Act authorizes a district court to enter "just and proper" injunctive relief pending the final disposition of an unfair labor practices claim by the Board. *See* 29 U.S.C. § 160(j); *Harrell ex rel. NLRB. v. Am. Red Cross, Heart of Am. Blood Servs. Region*, 714 F.3d 553, 556 (7th Cir. 2013). In fact, § 10(j) was enacted by Congress to address the issue of Board decisions taking so long their remedies become ineffective. *See Kinney v. Pioneer Press*, 881 F.2d 485, 487–88 (7th Cir. 1989). Sunbelt makes a few more fleeting arguments that all fly in the face of the fact that § 10(j) exists and is specifically tailored to address the lengthy process before the NLRB and to make parties implement action before the final resolution of the case. Clearly, Sunbelt's arguments are meritless.

Additionally, Sunbelt argues that "the public interest also favors a full and complete administrative process and not allowing a court to circumvent the Board's administrative process and adjudicative powers." (Docket #26 at 14). As stated above, the Court is authorized to grant injunctive relief through § 10(j). Further, the Court, when making a § 10(j) decision, does not make a ruling on the merits. Instead, the "court's inquiry is confined to the *probability* that the Director will prevail." *Bloedorn*, 276 at 287 (emphasis in original). Therefore, the Court is not circumventing the Board's administrative process or adjudicative powers. Frankly, the Court finds Sunbelt's argument inept at best and deceitful at worst.

The Court found in its original decision that the public interest favored granting a § 10(j) injunction. (Docket #18 at 14). Specifically, "the interest at stake in a § 10(j) proceeding is the public interest in the integrity of the collective bargaining process." *Am. Red Cross*, 714 F.3d at 557. The public interest is furthered in part by ensuring that "an unfair labor practice will not succeed because the Board takes too long to investigate and adjudicate the charge." *NLRB. v. Electro-Voice, Inc.*, 83 F.3d 1559, 1574 (7th Cir. 1996). Nothing Sunbelt has argued has persuaded the Court that the public interest instead lays in granting a stay. Thus, the public interest does not support granting a stay.

**4.    CONCLUSION**

For the foregoing reasons, this Court concludes that Sunbelt has failed to satisfy the standard required to grant a stay pending appeal. To permit further delay before requiring compliance with the Court's order would undermine the intended purpose of § 10(j), which is to provide prompt interim relief for these kinds of serious infractions of the Act.

Accordingly,

**IT IS ORDERED** that Sunbelt's motion to stay (Docket #19) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 3rd day of September, 2020.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge